418 So.2d 618 (1982)
Honorable Richard A. MEDLEN, Marshal, City Court of Plaquemine, La., et al.
v.
The STATE of Louisiana, et al.
No. 81-CA-2437.
Supreme Court of Louisiana.
July 2, 1982.
Rehearing Denied September 3, 1982.
William C. Dupont, Dupont, Dupont & Dupont, Plaquemine, Milton Osborne, Jr., City Prosecutor, for plaintiffs-appellees.
Jack T. Marionneaux, Asst. Dist. Atty., James P. Dore, Borron, Delahaye, Dupont, *619 Edward & Dore, Plaquemine, Carmack M. Blackmon, Mary Catherine Cali, Asst. Attys. Gen., Prentice L. G. Smith, Jr., Smith & Smith, Baker, for defendants-appellants.
LEMMON, Justice.
This is an appeal by the State of Louisiana and other defendants from a judgment declaring unconstitutional R.S. 13:2488.61 B, as enacted by Act 456 of 1972, and R.S. 13:2488.61 et seq., as enacted by Act 498 of 1980. The judgment in favor of the Marshal of the City Court of Plaquemine also declared that the City Court of Plaquemine had lawful existence under R.S. 13:1872 and 1951 and that the court's territorial jurisdiction consisted of all of Wards 2, 3, 6 and 8 of Iberville Parish.
Facts
The following facts were outlined by the trial judge and accepted by appellants:
"The Town of Plaquemine was created by Act 109 of 1878. Section 6 of this Act created a Mayor's Court and granted the Mayor the power of a committing magistrate in all cases arising under town ordinance, granted him the power to try cases involving violation of town ordinances, and gave him civil jurisdiction to the same extent as a Justice of the Peace. All fines imposed by the Mayor were to be paid into the town treasury at least once a month. Section 7 of this Act created the appointed position of Town Marshal. Section 9 of the Act gave the Town Marshal authority to attend on the Mayor's Court, the powers of a peace officer to execute warrants, writs, summons, and other orders of Court, and the power to make arrests for violations of state laws or local ordinances to the same extent as a Sheriff.
"By Act No. 32 of 1960, which was amended by Act No. 130 of 1964, (R.S. 13:1872[A]), the legislature of Louisiana created a general procedure for the creation of City Courts, and it was no longer necessary that a specific act be passed, so long as the guidelines set forth in Act No. 32 were followed. In 1964, by Act No. 201, the legislature amended the legislative charter of the Town of Plaquemine (Act 109 of 1878) to change its name to the City of Plaquemine. However, Section 2 of Act 201 contained the following language:
"`Notwithstanding the provisions of any laws of the state to the contrary, it shall not be mandatory upon said city to create the office of city judge, it being specifically herein provided that the city of Plaquemine shall have an option to create said office of city judge at such time as the mayor and board of selectmen of said city shall deem the creation thereof necessary and to the best interest of the city of Plaquemine.'
"Although the legislature had established general provisions governing the creation of City Courts, and although the City of Plaquemine had a population exceeding 5,000 persons and was the parish seat of Iberville Parish, in 1972 specific legislation was passed to create a City Court of Plaquemine. Act 455 of 1972 had the purpose of amending the legislative charter of the City of Plaquemine (Act 109 of 1878) by removing provisions pertaining to the Mayor's Court. Act 455 amended Section 6 of Act 109 of 1878 by deleting the last two sentences of the Section, which in effect withdrew the power of the Mayor to act as a Mayor's Court. Section 8 of Act 109 of 1878 was amended to provide that the Marshal shall attend the City Court of Plaquemine rather than the Mayor's Court, and Section 10 was amended to remove from the Secretary of the Board of Selectmen the power to certify copies of proceedings before the Mayor's Court. Unfortunately, Section 6 of Act 109 of 1878, as contained in Act 455, also provided that `The Mayor and Selectmen of said city shall hold their offices for one year, as herein provided, or until their successors are duly qualified....' (Emphasis added.) The purpose of Act 456 of 1972 was to abolish the Mayor's Court in the City of Plaquemine and create in its place a City Court presided over by a Judge. (R.S. 13:2488.61-13:2488.63, the original numbers contained in Act 456 of 1972 were re-designated pursuant to R.S. 24:253). Section B of R.S. 13:2488.61 provides that The City Court of Plaquemine is *620 created and shall have territorial jurisdiction throughout the City of Plaquemine.' [Emphasis supplied.] Section E of R.S. 13:2488.61 provides that the first Judge and Marshal of the City Court of Plaquemine shall be elected at the congressional elections in 1972 provided that the qualifying period for the election shall not be closed until 5:00 o'clock p. m. on September 1, 1972. Section D of R.S. 13:2488.62 provides that the Clerk of the City Court or the Marshal, as designated by the Judge, shall collect all fines, forfeitures, penalties, and costs, and all funds so collected, excluding costs, shall be paid into the city treasury. Pursuant to the authority of R.S. 13:2488.63 and R.S. 13:1885 the Clerk of the City Court has authority to certify all documents of the City Court. Both Acts 455 and 456 were certified as emergency legislation by the Governor and went into effect on July 12, 1972.
"Shortly after Acts 455 and 456 went into effect, it was discovered that through error the terms of office of the Mayor and Selectmen of the City of Plaquemine were reduced from four years to one year. On July 27,1972, the Mayor and Board of Selectmen of the City of Plaquemine, pursuant to the authority of R.S. 33:1181, adopted Ordinance No. 847, which had the purpose of amending the City's legislative charter to return the terms of the Mayor and Board of Selectmen to four years and re-instating the Mayor's Court. This ordinance sought to re-enact Sections 6,8,9 and 10 of Act 109 of 1878 as they existed prior to Act 455 of 1972. This Ordinance stated that in the general election held on June 13, 1972, the Mayor and Board of Selectmen of the City of Plaquemine were elected for terms of four years under Act No. 109 of 1878, that Act 455 of 1972 reduced that term of the Mayor and Board of Selectmen to one year and abolished the Mayor's Court, and that `it would be greatly unjust, unethical, and immoral to deprive the Mayor and five Board of Selectmen of their four years terms which they rightfully won in an election.' Pursuant to R.S. 13:1181 the ordinance was published, approved by the Attorney General on October 2, 1972, and approved by the Governor on October 9, 1972. R.S. 33:1181 provides that when the procedure contained therein is followed such an amendment to a legislative charter `shall have the force and effect of law.' No elections were held for City Judge and City Marshal for the City Court of Plaquemine in 1972, and the Mayor and Board of Selectmen of the City of Plaquemine continued to serve the four year terms to which they were elected in June of 1972. The Mayor continued to operate his Mayor's Court.
"By opinion dated June 15, 1973, the Attorney General advised the Governor that there were more than five thousand people in the City of Plaquemine and that the mandatory provisions of R.S. 13:1872 required that a City Judge be elected. By a second opinion dated June 28, 1973, the Attorney General advised the Governor that all of the people living in the various wards which were in whole or in part in the city limits of the City of Plaquemine should be allowed to vote for the City Judge and Marshal of the City Court and that the City Court would have territorial jurisdiction over the unincorporated areas of the wards as well as within the city limits, citing as authority R.S. 13:1872 and R.S. 13:1951. The City of Plaquemine contains portions of Wards 2, 3, 6 and 8 of Iberville Parish, which wards are also known as election districts B, C, E, and F, respectively. On October 3, 1973, the Governor issued a proclamation calling for a general election of City Judge and City Marshal for the City Court of Plaquemine to be held on December 18, 1973. The primary election was held on November 10,1973, in Wards 2, 3, 6, and 8 of Iberville Parish, which includes the unincorporated area outside of the City limits of Plaquemine as well as the city. Joseph B. Dupont, Sr. and Richard A. Medlen were elected Judge and Marshal respectively. Joseph B. Dupont, Sr. was and is residing in the unincorporated area of Ward 8 (election district F). Richard A. Medlen was and is residing in the unincorporated area of Ward 6 (election district E). The Judge and Marshal thereafter were duly commissioned to their respective offices by *621 the Governor, took their oaths of office, and have served as Judge and Marshal of the City Court of Plaquemine until the present date. During all of this time, the City Court of Plaquemine has in fact exercised territorial jurisdiction over the unincorporated areas of Wards 2, 3, 6 and 8 of Iberville Parish as well as the territory within the city limits of Plaquemine. Judge Dupont was not opposed for re-election in 1978. On September 16, 1978, Richard A. Medlen was re-elected to the position of City Marshal. Their elections were duly certified by the Secretary of State on December 7, 1978, and thereafter, they were duly commissioned to their respective offices for six (6) years terms by the Governor and took their oaths of office as required by law.
"On January 15,1980, the City of Plaquemine filed suits for writs of quo warranto directed against the Judge and Marshal of the City Court of Plaquemine requesting that they show by what authority they held their respective offices, claiming that the territorial jurisdiction of the Court was the city limits of Plaquemine and that, since the Judge and Marshal lived in the unincorporated area of the wards, they were not residing in the jurisdiction of the Court and could not hold office. Hearings were held on these applications on January 28, 1980. On February 28, 1980, this Court sustained exceptions of no right and no cause of action filed by the Judge and Marshal and dismissed the petitions of the City of Plaquemine. By supplemental judgment of this Court dated April 8, 1980, pursuant to the authority of Small v. Guste, 383 So.2d 1011, this Court also sustained the exception of the Judge to the jurisdiction of the Court. The City of Plaquemine appealed these rulings. The Court of Appeal for the First Circuit affirmed the ruling on the exception of lack of jurisdiction and dismissed the appeal with reference to Judge Dupont. City of Plaquemine v. Dupont, 388 So.2d 127 ([La.App.] 1st Cir. 1980). The Court of Appeal also affirmed the sustaining of the exceptions of no right and no cause of action filed by Marshal Medlen. City of Plaquemine v. Medlen, 393 So.2d 301 ([La.App.] 1st Cir. 1980).
"During the regular session of the 1980 legislature, Act 498 was adopted. This Act was signed by the Governor on July 22, 1980, and became effective September 12, 1980. Art. 3, Section 10, La.Const. of 1974. The purpose of this Act was to amend and re-enact R.S. 13:2488.61-13:2488.63 (Act 456 of 1972). The effect of this Act was to re-state that the territorial jurisdiction of the City Court of Plaquemine shall not extend beyond the city limits of Plaquemine; to reduce the staff of the Court to a Judge, a Marshal, and a Clerk, and no other personnel; to reduce the compensation of the Judge; to reduce the compensation of the Marshal; to reduce the compensation of the Clerk; to require that all fines, forfeitures, penalties, and civil and criminal costs be deposited monthly into the city treasury; and to limit the appropriations of the City of Plaquemine for the operational expenses of the City Court to the amount of funds deposited. By letter dated January 14, 1981, the Board of Review of the Municipal Police Officers Supplemental Pay of the Louisiana Department of Public Safety advised the City of Plaquemine that the request for supplemental pay of LeRoy Thomas, Jr., a Deputy City Marshal, was denied because the City Court of Plaquemine was not entitled to a Deputy City Marshal pursuant to Act 498 of 1980. (See Exhibit P-7.) By letter dated February 23, 1981, the Department of Labor of the State of Louisiana advised the Iberville Parish Police Jury that Comprehensive Employment and Training Act (CETA) employees could not be placed with the City Court of Plaquemine because of the provisions of Act 498 of 1980. This letter also advised that if no other work sites were available, that these participants may be placed on leave without pay until such time as a work site is available. (See Exhibit P-8.)"
The Marshal then filed this action for declaratory judgment, seeking to declare Act 498 of 1980 unconstitutional. Other parties intervened, and other issue were raised, and the trial judge commendably undertook to resolve all issues in one action. *622 Creation and Existence of the City Court
The lawful existence of the City Court of Plaquemine and the validity of the elections of the Judge and Marshal of that court were called into question by the strange series of events related above. The trial court correctly decided that the City Court was validly created by Act 456 of 1972.
La.Const.Art. 7, § 51 A (1921) vested the Legislature with the power to create city courts.[1] In Act 32 of 1960 (R.S. 13:1871 et seq.), the Legislature established uniform general provisions for the creation of city courts, and in Act 201 of 1964 the Legislature gave the City of Plaquemine the option to create the office of City Judge when the Mayor and Board of Selectmen deemed the creation necessary. Then in Act 456 of 1972 (R.S. 13:2488.61-13:2488.63), the Legislature established the City Court of Plaquemine by a specific legislative act.
R.S. 13:2488.63, enacted by Act 456 of 1972, provided that the general city court provisions of law contained in R.S. 13:1871 et seq. were applicable to the City Court of Plaquemine, except as otherwise specifically provided for therein. However, 15 days after the effective date of Act 456 of 1972, the Mayor and Board of Selectmen adopted Ordinance No. 847, which purported to amend and reenact the City's legislative charter so as to return the terms of office of the Mayor and Board of Selectmen to four years and to reinstate the Mayor's Court.
We are first faced with the conflict between the legislative creation of the City Court of Plaquemine by Act 456 of 1972 and the earlier grant by Act 201 of 1964 to the City of Plaquemine of the power to create the office of City Judge. Even if the Legislature could validly vest this power in a municipality, this authority was revoked when the Legislature created the City Court of Plaquemine by Act 456 of 1972. The trial court correctly decided that the City Court of Plaquemine was validly created by Act 456 of 1972.
We next address the effort by the City of Plaquemine in Ordinance No. 847 to reinstate the Mayor's Court. R.S. 33:1181 authorized that portion of Ordinance No. 847 which made changes in the terms of office of the city officials. As to the portion reinstating the Mayor's Court, however, a mayor's court cannot be created by municipal ordinance, because the Constitution vested the power to create courts in the Legislature. Gautreaux v. City of Baker, 270 So.2d 221 (La.App. 1st Cir. 1972), cert. denied, 272 So.2d 377. The trial court correctly held that Ordinance No. 847 had no effect on the valid existence of the City Court of Plaquemine.
The next question is the validity of the election of the judge and marshal, after no election was held at the 1972 Congressional elections as required by Act 456 of 1972.
There was no objection made to the failure to call the election in 1972, as required by Act 456 of 1972, or to the proclamation and the election held in 1973 under the general election law. The present judge and marshal were elected in 1973, were reelected in 1978, and are presently serving their terms of office. At this point in time, it is far too late to challenge the failure to *623 call the election in 1972 or the validity of the election held in 1973.
Territorial Jurisdiction of the City Court
Perhaps the most difficult issue in the case is the territorial jurisdiction of the City Court of Plaquemine.
The City of Plaquemine (now and in 1972) lies within portions of Wards 2, 3, 6 and 8 of Iberville Parish. Act 456 of 1972, which created the City Court of Plaquemine and fixed the territorial jurisdiction as the area within the city limits, was enacted pursuant to La.Const.Art. 7, § 51 A, quoted in footnote 1.
Defendants contend that if the court was validly created pursuant to Act 456 of 1972 (R.S. 13:2488.61), then the territorial jurisdiction must be "throughout the City of Plaquemine", as provided in R.S. 13:2488.61 B. On the other hand, plaintiffs contend (and the trial court held) that La.Const.Art. 7, § 51 A (1921) fixed the territorial jurisdiction of city courts created by the Legislature pursuant to that constitutional authority and that a legislative act could not authorize the creation of city courts of less than ward-wide jurisdiction.
Over the years, the several Constitutions have provided that judicial power is vested in a supreme court and in various inferior courts. The 1845 Constitution and subsequent ones (until 1921) have provided for justices of the peace as part of the Judiciary Department and defined their subject matter jurisdiction. The 1852 and 1864 Constitutions authorized the Legislature to establish other inferior courts, but that provision was not repeated in the 1879 Constitution, which vested judicial power "in a Supreme Court, in courts of appeal, in district courts and in justices of the peace".[2] See La.Const.Art. 61 (1852); La.Const.Art. 69 (1864); and La.Const.Art. 80 (1879).
The 1898 and 1913 Constitutions, after declaring that the judicial power is vested in "a Supreme Court, in Courts of Appeal, in District Courts, in justices of the peace, and in such other courts as are herein provided for", authorized the Legislature to abolish justice of the peace courts in wards containing cities of more than 5,000 inhabitants and to create courts of limited jurisdiction in their stead. La.Const.Art. 84 and 96 (1898) and La.Const.Art. 84 and 96 (1913).
The 1921 Constitution vested the judicial power "in a Supreme Court, in Courts of Appeal, in District Courts, and in such other courts as are hereinafter provided", eliminating the reference to justices of the peace. La.Const.Art. 7, § 1 (1921). (The jurisdiction of the justices of the peace was stated in Section 48.) The 1921 Constitution also authorized the Legislature to abolish justice of the peace courts and to establish courts of limited jurisdiction in their stead "in wards embracing the parish seat, or containing cities of more than five thousand inhabitants", thus adding the authority for wards which embrace the parish seat. La.Const.Art. 7, § 51 A (1921).[3]
When the Town of Plaquemine was created in 1878, the 1868 Constitution, then in effect, provided in part:
"No judicial powers, except as committing-magistrates in criminal cases, shall be conferred on any officers other than those mentioned in this title, except such as may be necessary in towns and cities;" La.Const.Art. 94 (1868).
This provision has been held to be sufficient authority for creation of a mayor's court. Berry v. Bass, 157 La. 81,102 So. 76 (1924).[4]
*624 Thus, when the City Court of Plaquemine was created in 1972, a Mayor's Court and justices of the peace were validly exercising limited civil and criminal jurisdiction in Wards 2, 3, 6 and 8 of Iberville Parish. At the time the Legislature was authorized to change mayors' courts and justices of the peace by legislative act. La.Const.Art. 7, §§ 46, 48 and 51 (1921); see L. Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37 La.L.Rev. 765, footnote 76 (1977). Act 456 of 1972 abolished the Mayor's Court in the four wards which embraced the parish seat and created the City Court in its stead, pursuant to La.Const. Art. 7, § 51 A (1921). The Mayor's Court had exercised civil jurisdiction to the same extent as a justice of the peace, and the territorial jurisdiction of the Mayor's Court had been throughout the City of Plaquemine. Significantly, Act 456 did not abolish the offices of justice of the peace and constable of Wards 2, 3, 6 and 8, but expressly left those offices in existence.
The Legislature may do everything which the Constitution does not prohibit. Joint Legislative Committee of Legislature v. Strain, 263 La. 488, 268 So.2d 629 (1972). While the Legislature could have abolished the Mayor's Court and the justice of the peace courts and created a court of limited jurisdiction with a territorial jurisdiction encompassing the entire four wards, the Legislature chose to abolish only the Mayor's Court and to create a City Court with a territorial jurisdiction only throughout the City of Plaquemine, which encompassed only portions of the four wards.[5]
The Constitution did not expressly fix the territorial jurisdiction of courts of limited jurisdiction created pursuant to Section 51 A of Article 7. Nothing in the Constitution required the Legislature to exercise the full extent of its power, and nothing prohibited the Legislature from abolishing only the Mayor's Court and leaving the offices of justices of the peace in existence in the four wards. Thus, there is no conflict between Act 456 of 1972 and La.Const.Art. 7, § 51 (1921).[6]
While R.S. 13:1872 does require the abolishing of the office of justice of the peace in the ward or wards containing the city upon the election of a city judge to a court created pursuant to that statute, the City Court of Plaquemine was created pursuant to special legislation and not to R.S. 13:1872. Moreover, Act 456 of 1972 was special legislation which in the event of conflict prevails over R.S. 13:1872, which is earlier and general legislation.
We conclude that Act 456 of 1972 validly fixed the territorial jurisdiction of the City Court of Plaquemine throughout the City of Plaquemine.
Constitutionality of Act 498 of 1980
Although Act 456 of 1972 fixed the territorial jurisdiction of the City Court of Plaquemine as the city boundary, the judge and marshal were elected by voters throughout the four wards.[7] Since that time, the City Court has exercised jurisdiction over all of the unincorporated areas of Wards 2, 3, 6 and 8.
Act 498 of 1980 purported to restrict the territorial jurisdiction of the City Court to the city limits,[8] to limit the number of court *625 personnel to a judge, a marshal, and a clerk, and to reduce the salaries of the present judge, marshal and clerk.
We have decided not to pass upon the arguments that Act 498 is unconstitutional for failure to publish notice of a local or special law and other possibly meritorious technical contentions. Counsel for plaintiffs points out that Act 627 of 1981 practically reenacted Act 498 of 1980. In the interest of judicial economy and efficiency, we will address the substantive issues in the instant proceeding, rather than require the trial judge to readjudicate the issues in an already filed new proceeding and the parties to bring the same issues up on another appeal.
As to the compensation of the judge and marshal, Act 498 of 1980 reduced the salaries of the judge and marshal. The Act also required that all costs collected by the court be paid monthly into the city treasury, although costs and fees received from civil litigation form part of the judge's and marshal's compensation. R.S. 13:1874(A) and 1883(D).
Compensation of a judge (and of an elected public official) cannot be decreased during the terms for which he is elected. La. Const.Art. V, § 21 and Art. X, § 27 (1974). Act 498 is therefore unconstitutional insofar as the Act decreased the compensation of the judge and marshal during their terms.
While conceding the correctness of the trial court's judgment in this regard, the State argues that we should afford Act 498 prospective application and rule that the Act is effective at the end of the present terms.
When Act 498 was enacted, the effective date of Act 498 was to be September 12, 1980.[9] Since we cannot say that the Legislature would have voted in the same way on the bill if the effective date had been different, we decline to declare that the Act can be given prospective validity effective at the end of the present terms.
The other major attack on the validity of Act 498 involves the limitation of court personnel. The court personnel prior to Act 498 included a judge, a marshal, three deputy marshals, a clerk, a deputy clerk and a court reporter. Act 498 reduced the personnel to a judge, a marshal and a clerk, and the Act further prohibited the court's having any other personnel. The Act also reduced the salaries of the personnel.
The trial court held Act 498 of 1980 violated the constitutional concept of separation of powers by reducing the number of personnel and the salaries to a level below that necessary for the operation of such courts.[10] As a basis for the holding the court observed that one branch of government cannot constitutionally exercise its power so as to arbitrarily preclude another branch from performing its constitutional function.
Apparently in response to the trial court's decision, the Legislature enacted Act 627 of 1981, which amended the statute to provide for one additional employee and to delete the prohibition against employing any other personnel. The amendment essentially conforms with the findings of the trial court by allowing for the employment of a deputy clerk and by deleting the prohibition of employment of other personnel, thus allowing for employment of a court reporter when necessary pursuant to R.S. 13:1892. Because the 1981 amendment made substantial changes in those portions of Act 498 of 1980 which were attacked in this suit on the ground of violation of separation of powers, it is unnecessary to pass on the trial court's judgment relating to that phase of the constitutional attack.
*626 Other Issues
The trial court, in extensive and exceptionally comprehensive reasons for judgment, decided many other issues raised in the proceedings. Although some of these other issues are discussed in the briefs of some parties, the brief of the only appellants does not raise these issues as assignments of error and does not argue the incorrectness of the judgment in respect to these issues.
Decree
The judgment of the trial court is set aside only insofar as the judgment declares Act 456 of 1972 unconstitutional in part and declares the territorial jurisdiction of the City Court of Plaquemine to be the entirety of Wards 2, 3, 6 and 8 of Iberville Parish. Judgment is rendered declaring that the territorial jurisdiction to be throughout the City of Plaquemine, pursuant to Act 456 of 1972. In all other respects, the judgment of the trial court is affirmed.
NOTES
[1] Section 51 A provides in part:

"The legislature shall have the power to abolish justice of the peace courts in wards embracing the parish seat, or containing cities of more than five thousand inhabitants, and to create in their stead courts with such civil jurisdiction as is now vested in justices of the peace, provided that such courts in cities of not in excess of ten thousand inhabitants shall have civil jurisdiction, concurrent with that of the district court, where the amount in dispute or the value of the movable property involved does not exceed five hundred dollars, exclusive of interest and attorney fees; and with criminal jurisdiction which shall not extend beyond the trial of offenses not punishable by imprisonment at hard labor under the laws of this state; and said courts shall have jurisdiction for holding of preliminary examinations in cases not capital, for the requiring of bonds to keep peace and for the trial of cases covering the violations of municipal and parochial ordinances; and the judges of such courts shall have authority to perform marriage ceremonies. (Emphasis supplied.)
[2] The 1868 Constitution vested the judicial power in parish courts, as well as a supreme court, the district court, and the justices of the peace. La.Const.Art. 73 (1868).
[3] The 1974 Constitution vests the judicial power "in a supreme court, courts of appeal, district courts, and other courts authorized by this Article". La.Const.Art. V, § 1 (1974). The 1974 Constitution also retained the existing district, family, juvenile, parish, city and magistrate courts, but authorized the establishment of other courts of limited jurisdiction only with parish-wide territorial jurisdiction and with subject matter jurisdiction that is uniform throughout the state. La.Const.Art. V, § 15 (1974). Existing mayors' courts and justice of the peace courts were also retained. La.Const. Art. V, § 20 (1974).
[4] La.Const.Art. 7, § 51 E (1921) authorized the Legislature to vest mayors and other municipal officers with jurisdiction over the violations of municipal ordinances.
[5] Several other city courts have been established with territorial jurisdiction according to city boundaries rather than ward boundaries. See, for example, R.S. 13:1952 (18), pertaining to the territorial jurisdiction of the City Court of New Iberia within the corporate limits of the City.
[6] Several legislative acts in various parishes abolished both the mayor's courts and the offices of justice of the peace, when city courts were created. See, for example, R.S. 13:2488.71, creating the City Court of the Town of Breaux Bridge.
[7] This election was called pursuant to an Attorney General's opinion, which stated that the establishment of a city court in Plaquemine was mandatory under R.S. 13:1872 and that the territorial jurisdiction extended to the boundaries of the four wards.
[8] Because the City Court actually exercised jurisdiction throughout the four wards, as opposed to throughout the City, Act 498 of 1980 apparently attempted to reconfirm the territorial jurisdiction as provided in Act 456 of 1972. However, since we have held that Act 456 of 1972 validly fixed the territorial jurisdiction as the city boundary, it is not necessary to address the validity of that portion of Act 498 of 1980.
[9] The title indicated that the bill provided in part for the repeal of R.S. 13:2488.61, 2488.62 and 2488.63 on January 1, 1985, but the body of the Act contained no such provision.
[10] The trial court found that a deputy clerk and a court reporter are absolutely essential to the efficient operation of the court and held that the statute unconstitutionally prohibited the employment of any personnel other than a judge, marshal and clerk.